Oh, it's still you. It is me. Yes, Your Honor. Both cases were actually given to me. The whole case was given to me first, and then the second case. An abundance of gifts. So we even saved your trip back to the courtroom by switching orders. Go ahead. May I please, Mr. Court? I would like to reserve again five minutes of my time for rebuttal. And if the Court has particular questions with the other claim, again, I would like to address very briefly the Till and the Restful claim and then focus on the Federal Debt Collection Practices Act, unless the Court would like me to address first the Federal Debt Collection Practices Act. In this particular case, Your Honors, again, we did have a merit intervening for purposes of the rescission claim. With respect to the Till damage claim in this case for Ms. Ho, there is no question about that she has attempted to stay the claim within the statute of limitation. The only issue, really, is whether she has met the Rule 8 and has provided a plausible claim. I respectfully will ask the Court to find that she has. With respect to the Federal Debt Collection Practices Act, Your Honor, the question in this particular case is we have a claim made by clearly a consumer against the servicer, against the trustee in the matter, and the question is are they debt collectors? It's a big issue. What is Ms. Ho's best argument for holding that either Bank of America or Recon Trust is a debt collector under the FDCPA? I mean, is it relevant that Bank of America succeeded to Countrywide's position as a debt servicer when it merged with Countrywide and not as a result of a transfer or a sale of Ho's mortgage? Well, again, whether they succeeded by merger or whether they succeeded by assignment or a transfer because the actual blank note was transferred to them, it's irrelevant. I believe the question is what was the status of the debt at the time each of these entities comes into play? But there is a difference, isn't there? It's one thing to buy a debt from somebody else and take it for collection. It's another thing to say, well, we're doing a merger and we've changed names. I mean, what if they just had a name change? They decide to have a hipper name. You know, companies do that sometimes. They will sort of change names. Does that? Does that? If it's a name change, I think it's a very different issue, Your Honor. And what if it's a merger? Well, again, the way Congress drafted it when it defined creditor, it specifically said that a creditor who collects his own debt will not be exempt from the statute so long as he receives that debt by assignment or transfer or acquire it when it's in default. So, again, Congress, by drafting those definitional provisions, made it clear that it is not enough just to say it's my own debt. It really kind of pinned the issue onto what is the debt and what are the activities. It was not what a person will label themselves. It is not how they perceive themselves. But it is the nature and the legal status of the debt and the specific activities that are undertaken to find out is there a violation of the act or not. So, we have three entities here, Your Honor. The first one is the countrywide entity and the countrywide loans, Inc., and then we have the countrywide servicing LP. Those are two different entities that will- Well, you want to make everyone a debt collector and you want to make every, you know, all foreclosures coming under the FDCPA. And I'm trying to figure out the practicality. Is it because if all in California, nonjudicial foreclosures, why shouldn't they be excluded from the coverage in light of California's anti-deficiency? But you want to throw that in. And so, if that were the case, I guess what I'm understanding, if it is a debt, then if they want to foreclose, even though they can't get a deficiency judgment, then they have to notify certain people to do it. If you make them- if they're a debt collector and they're included under the FDCPA, they can't notify the people. So, essentially, what does it do? Does it just make it impossible to foreclose on anyone? No. There has to be some, you know, there's a reason, you know, there's always a reason for everything. And in the practical world of this going on, there's a reason that you want everyone to be a debt collector and you want- and it's clearly beneficial to the debtor. And so I'm trying to figure out how this all works because if what you're asking us to do, I want to know how it plays out. Well, Your Honor, again, what happens in these kind of cases, it's in no way is it affecting the right of a trustee or the creditor to collect under the statutory scheme for foreclosure. And I'll just give an example. If any of these individual wins, they don't get the house free and clear, they don't get the mortgage disclosed. All that they are trying to do is like, well, you may take my house. Well, what it does do is expose the lender or the owner of the debt to liability. They can get sued and that can be quite expensive and they can settle. You know, it gives a lot of leverage to debtors for no apparent legitimate reason. You know, because countrywide, if I remember the whole story, it went belly up and then there was reorganization. All of that kind of stuff would become immensely more difficult if doing a reorganization or a merger would then expose the new entity to liability. Now, you say, you know, not much would happen, but obviously this is something that gives a lot of new leverage for borrowers. That is correct, Your Honor, and that's what exactly Congress did. So in deciding when you have an entity like countrywide that goes belly up and has to be rescued, this is another thing that weighs on the scale against somebody taking over and coming in. Because they are essentially creating additional liability by having a transfer. It just strikes me as another kind of thing that Congress really contemplated. Respectfully, Your Honor, the Congress enacted the Federal Debt Collection Practices and said they're doing it because they want to make sure that Well, it would be easier for you if they said even in case of merger. You know, if they said that explicitly or if there were legislative histories saying, well, even in case of merger. I know my colleagues look at legislative history, but I peek at least, you know, so it would help me. So it just strikes me this is not what they contemplated. It's just sort of a gut feeling that that's not the kind of situation they contemplated. Well, Your Honor, I think the question here is that the reason for the remedial statute was to put the honest debt collector at the same footing as the dishonest one. What we have here, and that is the core of this whole crisis, was that the entity that was a real lender was creating all these different entities and was just using it to drum up additional charges. Well, the lender is not covered and is never again exposed. But when the lender goes in and start to create entity only for the purpose of drumming up charges so that they can milk servicing fees, then the question is, is that fair compared to the smaller debt collection agency that have that ability? Has the CFPB expressed a view on any of these issues? Well, Your Honor, there were some interpretations in the form of interpretive opinions that were given, but I don't think that there are regulations that have been issued. But they don't have to act by regulation. They can act by amicus brief. They can act by informal letter, right? Brand X. Should we ask this and also trustee issues, both some pretty big issues. Should we ask for an amicus brief or views of the CFPB? Should we ask them for an amicus brief? Because this seems to me to implicate what you are talking about implicates a lot of the very kind of situation that happened countrywide. They go belly up and then somebody has to come in and reorganize. And this is the kind of thing that has pretty broad implications. You don't have to answer this question because you might have confidence in this. I'm just wondering, have you had any communications with them that you can tell me about? Your Honor, I have advised them of the case pending, those two cases pending. They actually did file an amicus brief in the 11th Circuit when the 11th Circuit decided whether mortgages are covered by the Federal Debt Collection Practices Act. So they expressed their opinion strongly endorsing it and using the Glazer case out of the 6th Circuit. So they have stated a position and they have been very— No relation? I'm sorry? Glazer case, no relation? I litigated that case, Your Honor. Ah. So they actually have taken quite aggressive action against a variety of market participants, both large entity as well as smaller debt collector including attorneys. Yes, but here we're dealing with successor liability, the liability of a successor corporation who was essentially blameless and who came to the rescue, really, I suspect. Again, my recollection is at the request of the government. Correct. I don't believe that that has been addressed. I am not aware of a case that has specifically addressed a successor in those countries. But you tell us that they are aware of these cases, or at least you've brought them to their attention. I notified them about the two cases when they got—I took them as a pro bono counsel. They did not intervene. Okay. You've got four minutes left. Can I reserve them for rebuttal, Your Honor? You can reserve them. They're all yours. In two seconds. Morning, Your Honors. Morning. Margaret Quinio for the defendants. There's a lot of issues in this case, but I'm going to start with the Federal Debt Collection Practices Act since that seems to be— Those seem to be the big issues. The ones that the Court's most interested in. So there's three issues embodied in this case under the Fair Debt Collection Practices Act. The first is the mortgage servicer issue. The second is the trustee under a deed of trust issue. And the third is whether sending—for the trustee sending notice of sale and default notices to the borrower in California under a nonjudicial foreclosure procedure constitutes debt collection. So with respect to the mortgage servicer issue, the first thing to consider are the allegations of a complaint. In the complaint, the plaintiff alleges that Countrywide Home Loans, Inc. slash Bank of America Home Loans, Inc. was a single corporation that had serviced her countrywide loan from its outset in June of 2007. So the allegations of the complaint—if you go through the complaint, you'll see every time it says Country Home Loans, it says slash Bank of America. She treated them as one defendant for purposes of the whole complaint. Secondly, now in reply, she says two things for the first time. She says, oh, if you look at the fine print on some of the exhibits, you'll see that there are in fact maybe three mortgage servicers during this short period of time. Countrywide Home Loans, Countrywide Home Loans Bank, Inc. and Countrywide Home Loans Bank Servicing, LP. And so she says, based on the fact that you can find these names in the exhibits, that that's enough to show that there were separate mortgage servicers. Those are contradicted by the allegations of the complaint. And the allegations of the complaint make it clear that there's just one servicer in this case. With respect to the mortgage issue, because it was raised for the first time in the reply brief, we did not have a chance to respond to it. But there are a number of cases, and I have three that I could cite to the court if you wanted to hear them, that say that in the context of mergers, that the merged company stands in the shoes of the original mortgage servicing company. And if you'd like us to provide that. Any of them Supreme Court cases? They are not, Your Honor. Any of them Ninth Circuit cases? No. So we still have to make the decision, right? You do. Should we ask the CFPB to express its view? Your Honor, I'd like to say two things about that. First of all. Yes or no? No. Yes or no, two things? No, I would say no. And the reason for that are two reasons for that. The first is that this case has been pending for four and a half years, and there have been no payments made on this mortgage since October of 2008. This case was briefed originally by Ms. Hoza Proper. A pro bono attorney was appointed. I'm going to just say consumer board. The Consumer Bureau knows that this case is pending, and they haven't stepped in. They have stepped in when they felt that their interests were implicated, and they haven't done so here. So you're pleading poverty on behalf of the bank? Is that what's going on? Okay. What's your second reason? I mean, I would think that the bank would have, you know, aside from whatever the payments are in this case, would have an interest in having the issue resolved and resolved authoritatively. So what is the point of our issuing a decision in this case when we're going to, you know, the CFPB can come along and file an amicus brief somewhere else and blow us out of the water on the brand X? What's the point of doing that? You know, isn't it the most prudent thing both for the court and for your client to get this authoritatively resolved after we hear what the agency has to say? You could, Your Honor. I would just say that it's not really encompassed in the allegations of the complaint, so it would be a stretch to even address the merger issue. Well, there's a trustee issue too, right? The trustee issue, yes, Your Honor. It's certainly a big issue, and you'd like to get that authoritatively resolved, wouldn't you? Yes, Your Honor. It doesn't seem sort of precarious for us to be talking about this when the agency has so much power to just undo what we do, if you read brand X. And I don't like reading brand X myself. The trustee issue was addressed in the FTC commentary, and so we do have something authoritative with respect to that issue. Talk to me about the FTC commentary. How does FTC get an act here? They were the agency that were in charge of these issues prior to the time that the Consumer Bureau was in the Dodd-Frank Act. So the Dodd-Frank Act changed the agency that was in charge, but the FTC was the agency in charge at the time that... And what do they say? They say that a trustee, under a deed of trust, falls into the incidental exception of the FTCPA. And where do they say this again? In their commentary, and we cite it in our brief. So let me go back now. So mortgage servicer, obviously, if you are a mortgage servicer prior to the time of the default, you're not a debt collector within the meaning of the statute. Here we have one mortgage servicer prior to the time of default, neither Countrywide nor Bank of America, is a debt collector. And even if the merger issue was implicated in the case, it should be resolved in favor of the merger not changing the situation. I'm going to say one other thing on that with respect to the statute. The statute talks about assignment of a note or a debt for collection. It does not talk about acquisition of a company or acquiring a company by merger. It talks about acquisition of a note in default for purposes of collection, and that's clearly not what happened here. If we were to get to the issue of, you know, I realize if they're not debt collectors, then the court could stop there. But assuming that this issue of whether it is a debt that comes under the FDCPA, I'm curious, as I sort of asked of Appellant's lawyer, how does the FDCPA protect borrowers in a way that California's anti-deficiency laws do not? And so what is the big picture on all of this? And I still suspect that, and then we have Glaser. You know, we've got three other circuits out there that have said that it is a debt, but the Ninth Circuit hasn't said anything. And can you give me your gloss on all of that? Yes, I can. It looks like there's a conflict in the cases, but there's really not. The conflict is more illusory rather than real. And, in fact, there's some conflict in the reasoning and the rationale. But if you look at the cases, there's really two lines of cases. So look at the Glaser and the Wilson line of cases. And those cases have concluded that the foreclosure activity in their cases constituted debt collection. And they took place in the context of state statutory schemes in which there were deficiency judgments, number one. Some of them were, in fact, judicial foreclosure proceedings and not non-judicial foreclosure proceedings. And they also involved entities or individuals that were debt collectors apart from their security interest enforcement activities. And they did much more than simply send out two statutory notices of default and sale. So all of those cases are consistent in that way. Deficiency judgments, debt collectors for other reasons, and sometimes involving even judicial foreclosures. Then you look at the other line of cases. I understand the second and the third, but I just want to make sure I understand the first, the deficiency judgment. So your view is, not to put words in your mouth, but just to make sure I understand. The idea is that if there's a deficiency judgment, you're already getting money. Yes, Your Honor. That's the argument? Yes. That's fine. You don't need to say more. I just wanted to make sure I was following the… And so you think… And in California, you can't get money. Exactly, Your Honor. If I remember my 40 years ago law school secure transaction, if you go through a non-judicial sale, 540 is something like that. 80D, I think, Your Honor. That's in California. In California, you can't get a deficiency. That's the tradeoff. That's the tradeoff. And it's important because there are some of those cases are actually non-judicial foreclosures in some of those cases, but they're in states where deficiency judgments can be obtained after the non-judicial foreclosure. So all of those cases are very different. And then you look at the cases, the district court cases from this circuit, the uniform California Court of Appeal cases, even two unpublished cases by this court in California and other western states, I would say, that have non-judicial foreclosure proceedings with anti-deficiency provisions. All of those cases are uniform, but that does not constitute debt collection within the meaning of the Federal Fair Debt Collection Practices Act. Well, we have nothing from the Ninth Circuit. Two unpublished cases, Your Honor. Santoro and Diesner, in which in unpublished decisions, the court didn't even think it was an issue that was worthy of publication. Well, counsel for the appellant said that, acknowledged that the debtors would have more rights against the people that are attempting to foreclose on that. I mean, would this essentially, how would it stall foreclosures, or how would that play out? Yes, Your Honor. The California non-judicial foreclosure proceeding statutes are highly protective of borrowers, and they're intended to provide the borrowers with every opportunity to maintain their interest in their properties. There's lots of procedures and timing and notices that require exact language that are all in there in order to protect the borrowers. So the statutory scheme already does that, and the Fair Debt Collection Practices Act actually steps in with respect to those businesses, like a trustee under a deed of trust, whose principal business is the enforcement of a security interest. There is one section of the Fair Debt Collection Practices Act that applies to that. That is 1692F, subdivision 6, and that says it prohibits abusive security interest enforcement activities. So the borrower in California gets all the protections of the California statute, gets the protection from abusive practices for security interest enforcement under the FDCPA. If you were to overlay the other provisions of the FDCPA over the California statutes, it would be impossible for the California statutes to be effective, and that's because of the timing issues and the notice issues and the other things that make the two statutes not, they don't work together. So would it be possible you would have to give some notices under, for a nonjudicial foreclosure that would violate the FDCPA? Yes, yes. For example, you have to give notice, a trustee under a deed of trust doesn't communicate with the borrower. The trustee sends the notices, but after that it says, if you have any questions, go talk to these people, and that's provided for in the statute. There are different rules under the FDCPA about what it needs to say and who the borrower is supposed to be able to talk to. Go ahead, I'm sorry. In one of the briefs, and maybe in the other case, they actually quote the notice that the trustee sends to the borrower, and it says the notice is sent for the purpose of collecting a debt. This firm is attempting to collect a debt on behalf of the holder and the owner of the note. Any information obtained by or provided to this firm or the creditor will be used for that purpose. So the notice, in effect, they may be required to send it, but basically they characterize themselves, they sort of characterize the procedure as one involving debt collection. The state notice, Your Honor? Well, I think what I'm reading from is in the Parr case, but it says on page 2 of the notice of the trustee sale, quality loan services stated what I just read to you. Assuming that is also true in this case, does that change anything? I don't think it changes anything if it's required in the state statute, although, could you give me the note and the notice of the? I was reading from the reply brief. I'm sorry. You're pausing? Thank you. It would take me too long to read, and I don't want to take your time here, Your Honor, but I think that the trustee under a deed of trust in California simply acts as an intermediary between the borrower and the lender. If the loan is paid, the trustee reconveys the property to the borrower. If there's a default, then these two statutory notices are issued, the property is sold, and the trustee allocates the proceeds of the sale to the borrower and the lender. This is important, I think. Then the borrower has no obligation to pay, and that's the definition of a debt in the FDCPA. It's that if you have an obligation to pay, and there is no obligation to pay after a foreclosure. Isn't the homeowner, in effect, being told that if you don't pay the debt, you're going to lose the house? So that, in effect, there's a threat, and isn't this an effort to collect the debt? I'm just asking. I'm not unsympathetic to your overall view. I think that that is not the purpose of nonjudicial foreclosure procedures. By the time it gets to that, there's little hope of the borrower paying the debt, but that the state requires them to be given this notice to let them know that they do have some rights, that they can come up with the money and pay the debt, that they aren't going to get their property foreclosed on. But the trustee is simply there to enforce the security interest, and the state says, before you do that, you have to give these two statutory notices. But all the trustee is trying to do is not to collect the debt, but to enforce the security interest, and the state is saying, to do that, you give these two notices. They're written by the state. They're in the statutes. There's no discretion with respect to them. And am I right, if I remember correctly, on the California law under its Rosenthal Act, the trustee in this scheme is not deemed to be a debt collector? That's exactly right, Your Honor. And every California court of appeal that has addressed this issue, even under the FDCPA, has said that in California, the trustee under a deed of trust is not a debt collector. So it's pretty uniform in California. It's not the collection of the debt. It's the enforcement of the security interest. With respect to the TILA rescission issue, yes, the merit case changed whether a tender was required or not, but in this case, the plaintiff affirmatively and expressly abandoned the rescission cause of action. It wasn't that she just didn't replete it. She affirmatively told the trial court, I'm not good, I'm abandoning this cause of action. And so for that reason, the rescission issue is not in play in this case. Thank you. Your Honor, the question that the court asked is actually in this particular case, it's document ECF document 41-1, and there is the notice of... I'm sorry, what is it? It's the docket... Is it in the excess record? I don't have, Your Honor, I do have the actual document in the docket, which is doc in the district court docket, document number 41. Is it in the excess? It is. But you just don't know where? I will submit the exact... No, I'm... I believe I... Just answer my question. But the document is notice of trustee sale... I'm sorry, tell me what it is again. It is a notice of trustee... No, no, what is it in the docket? It is document number 41-1. 41-1. And it was the document attached by the defendants to their various request for judicial notice before the district court. And this particular notice of trustee sale, what's relevant is it is the required form, but at the bottom it says, Recon Trust Company, N.A., is a debt collector attempting to collect a debt. Any information obtained will be used for that purposes. That's all that the FTC requires for a debt collector to give a notice. They're already giving it to California debtors. The question is not whether they will do anything. The question is they're only exposed to liability if they do something that is a prohibited practice. With respect, Your Honor, for your question about the FTC, on my opening brief, page 34, I actually have cited the position the FTC took with respect to this particular entity, and that is Countrywide Home Loan Servicing, L.P., which changed its name to Back Home Loan Servicing, L.P., and they alleged and took a consent agreement against them because they found, that's an allegation I'm saying, that those two entities were created as a subsidiary, were created solely to provide default-related services. So if there is, as counsel says, if the court is to find that the back entity steps into the shoes, it's not stepping in the shoes of the Countrywide Bank or the Countrywide Home Loan, Inc. It is stepping in the shoes of Countrywide Home Loan Servicing, L.P., which in the document attached by Ms. Ho shows that they only came into the picture as a mitigation entity, meaning a default servicer. So they are not the core servicer, which is Home Loan, Inc. These people will be protected and they will not be exposed to liability. Only the entity, like the L.P.s, which only come in as default servicers, will be subject, in this particular case, to the Federal Debt Collection Practices because they stepped into the whole process after default is done and the note is flagged as default. But they are fully owned subsidiaries. They are subsidiaries, yes. But they are an L.P. which was created solely for that purpose. And the way that FTC claims is they were created to create other entities, affiliated entities, to refer to vendors so that they collect additional fees. Okay. Thank you. Thank you, Your Honor. Okay. Agent Sagi will stand submitted.
judges: Korman, Kozinski, Callahan